**STATE of Minnesota, Respondent,**

v.

**Joseph A. DAHL, Petitioner, Appellant.**

**No. C0–92–1056.**

Supreme Court of Minnesota.

April 2, 1993.

Michael F. Cromett, St. Paul, for appellant.

James H. Manahan, Special Asst., St. James City Atty., Mankato, and Hubert H. Humphrey, III, Atty. Gen., St. Paul, for respondent.

KEITH, Chief Justice.

We granted the petition of defendant, Joseph A. Dahl of the Watonwan County Sheriff's Office, for review of the unpublished decision of the court of appeals affirming his misdemeanor conviction of theft (of $39 in overtime pay) by false representation, Minn.Stat. § 609.52, subd. 2(3) (1992).[1] Concluding that the evidence was insufficient to establish that a crime was committed, we reverse defendant's conviction outright.

Defendant and his chief accuser, St. James Police Officer Mark Carvatt, are both members of the Board of the Minnesota Valley Drug Task Force, a multi-county task force. Carvatt is the "pivot" or "point" person for the city police department's "war" on drugs, and defendant has the same role in the county sheriff's "war" on drugs.

There is no dispute that there has been conflict and tension between Carvatt and defendant for some time. Defendant testified additionally that he felt the "information flow" was one-way instead of two-way—that he was providing Carvatt and the city drug investigators with information but that Carvatt was not returning the favor. Carvatt admitted at trial that he had ridiculed or joked about defendant behind his back.

Defendant was a 13– or 14–year veteran with the sheriff's office, was viewed by coworkers as efficient and hard-working, and apparently had the full confidence of his superior, Sheriff Jack Keech.

In his role as "point" person for the county's investigation into drug trafficking and as a member of the multi-county task force, defendant helped obtain an identity, a job, and a place to live for a deputy from another county, Bruce Christenson, to come to Watonwan County and act as an undercover "narc."

One April afternoon in 1991 when he was off-duty, defendant, who is 36 and the father of three children, drove in his pickup truck with his children to the golf club. He had decided not to join the golf club for the coming summer, and the purpose of going to the club was to get his motorized golf cart and take it home.

As he was heading home, pulling the golf cart behind the pickup truck he was driving, he drove through a roadside rest area which is located *outside* the city limits of St. James, apparently near the golf club. He testified that he saw Officer Carvatt, wearing plain clothes, standing and talking in open view with Christenson, the undercover narcotics officer defendant had helped "plant" in St. James. Carvatt was next to his own pickup truck and talking with Christenson, whose vehicle apparently was nearby.

There is no dispute that when there is an undercover narcotics officer operating in a small town, it is essential that the officer not be seen in the company of any local law enforcement officers. Defendant testified that he was "shocked" to see the two of them in a public area talking to each other ("If I could see them somebody else could see them."). He also testified that he wanted to know if they were operating outside the city's jurisdiction, since they were outside the city limits in an area where the county alone had jurisdiction. Accordingly, or so he testified, after he exited the rest area he did a circle and reentered the area and approached the two and asked what they were doing.

Carvatt and Christenson, who differ as to the length of the conversation (Carvatt said 5 minutes, Christenson said 15), admit that defendant asked them what they were doing (they were meeting after a controlled "miked" drug "buy" had fallen through), but they testified that the conversation was mostly just a "bull session." It is entirely

1. The court of appeals reversed outright defendant's misdemeanor conviction of asking for or receiving unauthorized compensation under color of office, Minn.Stat. § 609.45 (1992), based on the same conduct. The court of appeals concluded that there was insufficient evidence to sustain that conviction. The state filed its response to the petition for review without asking for review of this part of the court of appeals' decision.

possible that while it was a bull session from their perspective, it was not a bull session from the perspective of the defendant. The defendant admits there was some small talk involved, but he also contends that there was a legitimate job-related purpose to his decision to approach and talk to the men.

In any event, when defendant filled out his time sheet for the pay period in question, he reported himself as being entitled to overtime compensation for the meeting in question. The union contract provides that if a deputy works even one minute of overtime, he is entitled to two hours of overtime compensation. In other words, if, for example, an off-duty officer is called in to administer a breath test and on the way to the station gets a call saying his/her services are not needed, the officer is entitled to two hours of overtime compensation. Defendant, acting pursuant to the contract provision, reported himself as being entitled to two hours of compensation based on the meeting. Defendant, however, did not just fill out the time sheet. He also spoke to the sheriff and told him briefly about the meeting, and the sheriff, who wanted to be updated on all such matters, gave his usual response, "Duly noted." The sheriff, who testified for the defense, not for the state, agreed in his testimony that defendant did this. The sheriff testified that it did not matter that there is a written policy requiring "pre-authorization" before someone does any overtime work, because he had long ago abandoned the policy and practice as being impractical and a waste of time. In summary, the sheriff testified that there was "no question" in his mind that defendant was entitled to be paid, and he testified further that he signed the pay sheet submitted by defendant because he made a determination that compensation was warranted.

The city police department has offices in the same building as the sheriff, and Carvatt apparently was present when an employee of the auditor's office was processing defendant's time sheets. Instead of going to the sheriff with his concern that defendant had improperly requested overtime pay to which he was not entitled, Carvatt went to the county attorney, who filed charges against defendant.

 Of necessity, the general rule is that an appellate court, in reviewing a sufficiency of the evidence claim, looks to the evidence in the light most favorable to the verdict. *See State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978). Looking at the record in that light, we conclude that the state's case of criminal wrongdoing is too weak to sustain defendant's theft conviction. Accordingly, defendant's conviction is reversed outright.

Reversed.